IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MICHELE S.,[1] | ) |
| | ) |
|     **Plaintiff,** | ) |
| | ) No. 21 C 1764 |
| v. | ) |
| | ) Magistrate Judge |
| KILOLO KIJAKAZI, Acting | ) Maria Valdez |
| Commissioner of Social Security,[2] | ) |
| | ) |
|     **Defendant.** | ) |
| | ) |

## MEMORANDUM OPINION AND ORDER

This action was brought under 42 U.S.C. § 405(g) to review the final decision of the Commissioner of Social Security denying Plaintiff Michele S.'s claim for Disability Insurance Benefits ("DIB"). The parties have consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). For the reasons that follow, Plaintiff's motion for summary judgment [Doc. No. 14] is denied, and the Commissioner's cross-motion for summary judgment [Doc. No. 20] is granted.

---

[1] In accordance with Internal Operating Procedure 22 – Privacy in Social Security Opinions, the Court refers to Plaintiff only by her first name and the first initial of her last name.

[2] Kilolo Kijakazi has been substituted for her predecessor pursuant to Federal Rule of Civil Procedure 25(d).

# BACKGROUND

## I. PROCEDURAL HISTORY

On November 2, 2018, Plaintiff filed a claim for DIB, alleging disability since October 1, 2017. The claim was denied initially and upon reconsideration, after which she timely requested a hearing before an Administrative Law Judge ("ALJ"). A telephonic hearing was held on March 31, 2020, and all participants attended the hearing by telephone. Plaintiff appeared and testified at the hearing and was represented by counsel. A vocational expert ("VE") also testified.

On April 23, 2020, the ALJ denied Plaintiff's claim for benefits, finding her not disabled under the Social Security Act. The Social Security Administration Appeals Council then denied Plaintiff's request for review, leaving the ALJ's decision as the final decision of the Commissioner and, therefore, reviewable by the District Court under 42 U.S.C. § 405(g). *See Haynes v. Barnhart*, 416 F.3d 621, 626 (7th Cir. 2005).

## II. ALJ DECISION

Plaintiff's claim was analyzed in accordance with the five-step sequential evaluation process established under the Social Security Act. *See* 20 C.F.R. § 404.1520(a)(4). The ALJ found at step one that Plaintiff did not engage in substantial gainful activity during the period from her alleged onset date of October 1, 2017 through her date last insured of December 31, 2019. At step two, the ALJ concluded that Plaintiff had the following severe impairments: degenerative disc disease of the thoracic spine with compression fractures. The ALJ concluded at step

three that Plaintiff's impairments, alone or in combination, do not meet or medically equal any listed impairments.

Before step four, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to perform light work with the following additional limitations: could not climb ladders, ropes, or scaffolds; could not work around unprotected heights, open flames, or unprotected dangerous machinery; and could have no concentrated exposure to extremes of cold, heat, or humidity. At step four, the ALJ concluded that Plaintiff was capable of performing her past relevant work as a dispensing optician, leading to a finding that – from the alleged onset date through the date last insured – Plaintiff was not disabled under the Social Security Act.

## DISCUSSION

### I.     ALJ LEGAL STANDARD

Under the Social Security Act, a person is disabled if she has an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(a). In order to determine whether a plaintiff is disabled, the ALJ considers the following five questions in order: (1) Is the plaintiff presently unemployed? (2) Does the plaintiff have a severe impairment? (3) Does the impairment meet or medically equal one of a list of specific impairments enumerated in the regulations? (4) Is the plaintiff unable to perform her former

3

occupation? and (5) Is the plaintiff unable to perform any other work? 20 C.F.R. § 416.920(a)(4).

An affirmative answer at either step three or step five leads to a finding that the plaintiff is disabled. *Young v. Sec'y of Health & Human Servs.*, 957 F.2d 386, 389 (7th Cir. 1992). A negative answer at any step, other than at step three, precludes a finding of disability. *Id.* The plaintiff bears the burden of proof at steps one to four. *Id.* Once the plaintiff shows an inability to perform past work, the burden then shifts to the Commissioner to show the plaintiff's ability to engage in other work existing in significant numbers in the national economy. *Id.*

## II. JUDICIAL REVIEW

Section 405(g) provides in relevant part that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Judicial review of the ALJ's decision is thus limited to determining whether the ALJ's findings are supported by substantial evidence or based upon legal error. *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000); *Stevenson v. Chater*, 105 F.3d 1151, 1153 (7th Cir. 1997). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). An ALJ's decision should be affirmed even in the absence of overwhelming evidence in support: "whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence is . . . 'more than a mere scintilla.' . . . It means – and

4

means only – 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154, (2019) (citations omitted). This Court may not substitute its judgment for that of the Commissioner by reevaluating facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility. *Skinner*, 478 F.3d at 841; *see also Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008) (holding that the ALJ's decision must be affirmed even if "'reasonable minds could differ'" as long as "the decision is adequately supported") (citation omitted).

However, even under this relatively lenient standard, an ALJ is not absolved of her duty to support the decision with record evidence. *See Meuser v. Colvin*, 838 F.3d 905, 910 (7th Cir. 2016) ("We will uphold an ALJ's decision if it is supported by substantial evidence, but that standard is not satisfied unless the ALJ has adequately supported his conclusions."). The ALJ is not required to address "every piece of evidence or testimony in the record, [but] the ALJ's analysis must provide some glimpse into the reasoning behind her decision to deny benefits." *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001). In cases where the ALJ denies benefits to a plaintiff, "he must build an accurate and logical bridge from the evidence to his conclusion." *Clifford*, 227 F.3d at 872. The ALJ must at least minimally articulate the "analysis of the evidence with enough detail and clarity to permit meaningful appellate review." *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005); *Murphy v. Astrue*, 496 F.3d 630, 634 (7th Cir. 2007) ("An ALJ has a duty to fully develop the record before drawing any conclusions . . . and must adequately

5

articulate his analysis so that we can follow his reasoning . . . ."); *see Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005).

Where conflicting evidence would allow reasonable minds to differ, the responsibility for determining whether a plaintiff is disabled falls upon the Commissioner, not the court. *See Herr v. Sullivan*, 912 F.2d 178, 181 (7th Cir. 1990). However, an ALJ may not "select and discuss only that evidence that favors his ultimate conclusion," but must instead consider all relevant evidence. *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994).

### III. ANALYSIS

Plaintiff argues that the ALJ's decision was in error for several reasons, including: (1) the ALJ failed to confront evidence contrary to her conclusion at step four and consequently neglected to properly evaluate step five; (2) the ALJ failed to assess Dr. Cynthia Cabalfin's opinions in accordance with the applicable regulations; (3) the ALJ's credibility assessment is patently wrong; (4) the ALJ failed to sufficiently address Plaintiff's likely absences; and (5) the ALJ's decision is constitutionally defective. Each argument will be addressed below in turn.

#### A. <u>The ALJ's Step Four Determination</u>

As stated above, the ALJ determined that Plaintiff would be capable of performing her past relevant work as a dispensing optician. (R. 23.) Plaintiff argues that "[t]he ALJ's Step 4 conclusion [Plaintiff] could perform her past relevant work as a dispensing optician as it is generally performed constitutes harmful legal error as this conclusion ignored [Plaintiff's] testimony she only worked part-time as an

6

optician prior to stopping work all together [sic] in 2014." (Pl.'s Memo. at 8.) In advancing this argument, Plaintiff latches on to the ALJ's statement that Plaintiff continued to work full-time following a boating accident in 2011, which Plaintiff claims is erroneous because she testified to only part-time work from 2011 to 2014. The Court concludes that this discrepancy does not require remand. The alleged onset date is October 1, 2017, six years after the 2011 accident. Plaintiff is essentially contending that because she worked only part-time in her former job immediately following the 2011 accident, that necessarily means that she would never be able to perform the job full-time again. The Court rejects Plaintiff's logic in that regard. The pertinent question is whether Plaintiff could work as of October 1, 2017, and her work ability as of 2014 is not determinative.

Plaintiff also generally contends as part of her first argument that the ALJ erred in finding that Plaintiff retained the RFC to perform light work. However, in reaching her determination, the ALJ reasoned that Plaintiff: "has undergone minimal treatment after the alleged onset date, with treatment consisting entirely of physical therapy and injections" (R. 18); "had no specific complaints about back pain until she had the consultative internal medicine exam more than a year after the alleged onset date" (*id.* at 19); in December 2018 "had a normal range of motion in both the upper and lower extremities as well as the cervical and lumbar spine" (*id*); "had no specific treatment for back pain until she saw Cynthia Cabalfin, M.D. on June 28, 2019" (*id.*); and had a "physical exam [that] revealed only minimal tenderness in the thoracic spine" in July 2019 (*id.*). The ALJ also went into depth in

7

explaining that "treatment modalities have been effective at improving the claimant's functional mobility and decreasing her pain." (*Id.* at 20.) Given these findings, the Court concludes that the ALJ's light work determination was adequately supported. And, ultimately, the Court finds Plaintiff's first arguments unavailing.

B.   **The ALJ's Assessment of Dr. Cynthia Cabalfin's Opinions**

Plaintiff argues that because "the ALJ failed to give good reasons to find Dr. Cabalfin's opinion unpersuasive the decision cannot stand." (Pl.'s Memo. at 11.) As an initial matter, Plaintiff's assertion in that regard advances the wrong standard. Because Plaintiff filed her claim in 2018, the ALJ was required to evaluate the medical opinion evidence under regulations applicable to claims filed on or after March 27, 2017. 20 C.F.R. § 404.1520c (2017). Under this regulation, the ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [a claimant's] medical sources." 20 C.F.R. § 404.1520c(a). An ALJ is instead required to articulate "how persuasive [she] find[s] all of the medical opinions and all of the prior administrative medical findings in [a claimant's] case record." 20 C.F.R. § 404.1520c(b). Factors to be considered in this evaluation include supportability, consistency, relationship with the claimant, specialization, and other factors that tend to support or contradict a medical opinion or prior administrative medical finding. 20 C.F.R. § 404.1520c(a), (c). Supportability and consistency are the two most important factors. 20 C.F.R. § 404.1520c(a); *see* 20 C.F.R. §

404.1520c(c)(2) ("The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be."). An ALJ's decision must explain how she considered the factors of supportability and consistency, but she is not required to explain how she evaluated the other factors. 20 C.F.R. § 404.1520c(b)(2). Plaintiff does correctly state that the ALJ should consider "an opinion's consistency with the record as well as its objective supportability." (Pl.'s Memo. at 12.)

Here, the ALJ recounted Dr. Cabalfin's rather extreme opinions, including her determinations that Plaintiff "could only walk a block without rest or severe pain, sit or stand 15 minutes at a time, and sit or stand/walk a total of less than two hours each in an eight-hour day." (R. 22.) The ALJ also noted Dr. Cabalfin's opinion that Plaintiff "would miss more than four days of work per month." (*Id.*) In finding Dr. Cabalfin's opinions unpersuasive, the ALJ reasoned as follows:

> I have not found that [the opinion] is supported by the objective medical evidence. Dr. Cabalfin admitted that she had not seen the claimant from 2011 to 2019. In the interim, the claimant continued to work full time[3] until 2014. In July 2019, [the] last record on file from Dr. Cabalfin, the physical exam documented only minimal tenderness in the thoracic spine and the claimant appeared comfortable at the exam. The claimant was not prescribed any medication. The record does not document any specific gait limitations. Furthermore, the record suggests that physical therapy was effective. The claimant told Dr. Cabalfin that her pain was relieved with . . . Tylenol. This is consistent with a finding that the claimant is capable of light work with the limitations set forth above.

(R. 22 (citations omitted).

---

[3] As addressed above, there is a discrepancy concerning whether Plaintiff worked full-time or part-time from 2011 to 2014.

9

Given the ALJ's explicit rationales, the Court finds that the ALJ properly assessed and explicated supportability and consistency in discounting Dr. Cabalfin's opinions. *See* 20 C.F.R. § 404.1520c(b)(2). And, in terms Plaintiff employs, the Court rejects her argument that the ALJ failed to give "good reasons" for discounting Dr. Cabalfin's opinions. *See Underwood v. Astrue*, 430 F. App'x 532, 535 (7th Cir. 2011). The Court declines Plaintiff's invitation to reweigh the evidence in relation to Dr. Cabalfin's opinions, which is forbidden. *See Gedatus v. Saul*, 994 F.3d 893, 900 (7th Cir. 2021). Accordingly, the Court rejects Plaintiff's second argument.

### C. The ALJ's Credibility Assessment

Plaintiff argues that they ALJ erred in finding her reported symptoms not entirely credible. With respect to Plaintiff's subjective symptoms, the ALJ recounted Plaintiff's reports that "she is disabled due to compression fractures in her thoracic spine, disc protrusions in her thoracic spine, back pain, migraines, scoliosis, and kyphosis." (R. 18.) In discounting Plaintiff's allegations, the ALJ reasoned that Plaintiff's statements "are inconsistent because the claimant alleges she is disabled due to injuries sustained several years prior to the alleged onset date." (*Id.*) The ALJ explained that Plaintiff worked following her 2011 boating accident "and did not pursue additional treatment for her condition until almost two years after the alleged onset date." (*Id.*) The ALJ further noted that Plaintiff "has obtained relief from conservative treatment that includes physical therapy and injections." (*Id.*)

This Court gives "the ALJ's credibility finding special deference and will overturn it only if it is patently wrong." *Summers v. Berryhill*, 864 F.3d 523, 528

10

(7th Cir. 2017) (internal quotations and citation omitted). "[P]atently wrong . . . means that the decision lacks any explanation or support." *Murphy v. Colvin*, 759 F.3d 811, 816 (7th Cir. 2014) (citation omitted). Under that standard, the Court finds that, per the ALJ's explanations outlined above, the ALJ reasonably determined that Plaintiff's subjective symptoms were not fully corroborated. *See Atkins v. Saul*, 814 F. App'x 150, 155 (7th Cir. 2020) ("Here, the ALJ otherwise explained his conclusion adequately. He explained that the objective medical evidence and Atkins's daily activities did not corroborate his subjective symptoms.") (citations and internal quotations omitted); *Ray v. Saul*, 861 F. App'x 102, 107 (7th Cir. 2021) ("Because the ALJ's weighing of [claimant's] reported symptoms in the context of the whole record is supported by substantial evidence, we find no reversible error on this front either."); *Schrank v. Saul*, 843 F. App'x 786, 789 (7th Cir. 2021) ("[T]he ALJ's credibility determination was not 'patently wrong,' because she found [claimant] not credible for several reasons that were adequately supported by the record.") (citation omitted); *cf. Lacher v. Saul*, 830 F. App'x 476, 478 (7th Cir. 2020) ("The ALJ's rationale here was thin, but it was adequate to reflect her conclusion that the objective medical evidence and Lacher's daily activities did not corroborate his subjective symptoms."). While Plaintiff argues that her "work history emphatically underscores her credibility" (Pl.'s Memo. at 13), she does not explain why her "strong work record" necessarily overrides the other reasons offered by the ALJ for discounting Plaintiff's subjective symptoms. Accordingly, the Court finds no error in the ALJ's credibility assessment.

### D. **Plaintiff's Alleged Absence Requirements**

Plaintiff devotes one paragraph to an argument that "the ALJ failed to sufficiently address likely absences" as Plaintiff "testified of her inconsistent attendance at her prior job" and there is evidence that she "would miss more than 4 days of work monthly." (Pl.'s Memo. at 12-13.) Plaintiff's argument is predicated on her own reports and the opinion of Dr. Cabalfin (addressed above) that Plaintiff would require four monthly absences. The Court agrees with Defendant that "because the ALJ reasonably found the opinion of Dr. Cabalfin unpersuasive and subjective statements alone cannot establish disability, the ALJ appropriately concluded plaintiff did not require regular absences from work." (Def.'s Memo. at 24.) Accordingly, the Court rejects Plaintiff's argument concerning her asserted absence requirements.

### E. **Plaintiff's Constitutional Argument**

Finally, Plaintiff devotes three paragraphs to an argument that "[t]he appointment of Andrew Saul as a single Commissioner of SSA, who was removable only for cause and serves a longer term than the President, violates separation of powers [such that] the decision in this case, by an ALJ and Appeals Council Judges who derived their authority from Mr. Saul, is constitutionally defective." (Pl.'s Memo. at 14-15.) Plaintiff's contention is predicated on the Supreme Court's decision in *Seila Law LLC v. CFPB*, 140 S. Ct. 2183 (2020), in which the Court held that it is unconstitutional for a federal administrative agency to be led by a single official who can be removed by the President only for cause. However, following the

12

Supreme Court's decision in *Collins v. Yellen*, 141 S. Ct. 1761 (2021), "numerous courts have ruled that a frustrated Social Security applicant mounting a constitutional challenge based on *Seila Law* must show that the unconstitutional removal provision actually caused her harm in some direct and identifiable way." *Cheryl T. v. Kijakazi*, No. 20 C 6960, 2022 WL 3716080, at *4 (N.D. Ill. Aug. 29, 2022). That is, the claimant "must show a nexus between the removal restriction and the harm suffered, and the mere fact of a disappointing outcome on her application for Social Security benefits will not suffice." *Id.* (citation and internal quotations omitted). A claimant "could establish the requisite nexus by showing that 1) the commissioner played a role in the agency action and 2) the president would have removed the commissioner to prevent the action but-for the removal provision." *Id.* (citation and internal quotations omitted).

Based on this authority, the Court finds that Plaintiff's constitutional argument fails because she has not shown that the removal provision in question actually caused her harm in some direct and identifiable way. *See Lizette C. v. Kijakazi*, No. 21 C 3517, 2022 WL 3369274, at *2 (N.D. Ill. Aug. 16, 2022) ("[E]ven if *Seila* rendered unconstitutional the statute governing removal of the SSA Commissioner, plaintiff would be entitled to a remand only if she were harmed by the unconstitutional statute, a showing plaintiff has not made.") (citation omitted). The required nexus is missing, and Plaintiff has not established that the identity of the Commissioner in any way affected the ALJ's decision in this case. Accordingly, the Court rejects Plaintiff's final argument.

13

## **CONCLUSION**

For the foregoing reasons, the points of error raised by Plaintiff are not well taken. Accordingly, Plaintiff's motion for summary judgment [Doc. No. 14] is denied, and the Commissioner's cross-motion for summary judgment [Doc. No. 20] is granted.

**SO ORDERED.**                 **ENTERED:**

**DATE:** September 26, 2022

                                                  **HON. MARIA VALDEZ**
                                                  **United States Magistrate Judge**